ORANGE COUNTY IRRIGATION COMPANY v. ORANGE NATIONAL BANK.

Decided June 27, 1910.

**1.—Sequestration—Sufficiency of Description.**

In passing upon a motion to quash a writ of sequestration on the ground that it did not sufficiently describe the property sought to be taken, the writ must be judged by its own recitals, and not by any evidence which might tend to show that it was not in fact levied upon property of the defendant. Rule applied.

**2.—Evidence—Harmless Error.**

The admission of incompetent testimony over objection is harmless error when the fact it tends to prove is admitted by the objecting party.

**3.—Same.**

The defense being that the secretary of the defendant corporation had no authority to waive a lien held by the corporation, the exclusion of the by-laws, when offered to prove that fact, becomes harmless error when the court charges the jury to that effect.

**4.—Same—Letter to Third Party.**

In a contest between a mortgagee and a landlord as to the right to property of a tenant, a letter written by the landlord to a third party for the purpose and with the intention of its being used to induce the mortgagee to make a loan to and secure a mortgage from said third party on the property in controversy which was afterwards sold by said third party to the tenant, and which was in fact so used, is admissible in evidence against the landlord who subsequently acquired his lien. The fact that the letter was not addressed directly to the mortgagee was immaterial.

Appeal from the District Court of Orange County. Tried below before Hon. W. B. Powell.

*Bisland & Bruce,* for appellant.

*Adams & Huggins,* for appellee.

REESE, ASSOCIATE JUSTICE.—This is a trial of the right of property in 248 sacks of rice of the alleged value of $2.50 per sack, in the aggregate $620, which had been seized under a writ of sequestration at the suit of the Orange National Bank as the property of D. M. Wingate to satisfy an indebtedness of $1315.20, besides interest, secured by mortgage, as alleged, on the rice, which was claimed by the Orange County Irrigation Company. Claimant's affidavit and bond were made by the Irrigation Company, and upon trial of the issues in the District Court with a jury, there was judgment for the bank, from which this appeal is prosecuted.

The statements of the issues presented by the respective parties show that the property was seized as the property of D. M. Wingate under a writ of sequestration sued out by the bank in a suit instituted by it against said Wingate and H. W. Womack upon a note for $1315, secured by a mortgage executed by Wingate to secure the same. Appellant's claim to the rice is based upon its allegations that it is a part of a crop of rice raised by Wingate on 300 acres of land rented by him of appellant upon which they had a landlord's lien for a large indebtedness incurred by way of advances in money and supplies to enable Wingate to make said crop and that to satisfy such indebtedness Wingate had delivered the rice to it. Appellee in reply alleged that if appellant ever had a landlord's lien on the property it had been waived by it in favor of the lien of appellee, and that if appellant had possession of the rice at the time of the levy it was as the agent and bailee of said Wingate. The case turned entirely upon the issue of whether the appellant had waived its landlord's lien upon the rice.

The evidence is sufficient to establish the following conclusions: In February, 1908, D. M. Wingate was desirous of renting from appellant a tract of 300 acres of land known as the Lyons Place for the purpose of raising rice, and appellant was equally desirous that he should do so. Wingate needed some mules to enable him to work this land, but did not have the money to pay for them and Womack had the mules to sell. Appellant proposed to endorse Wingate's note for the mules, but Womack would not agree to this as he wanted such security as the Orange County National Bank would accept, as he expected to get the money from the bank. He proposed that Hart, the president of the Irrigation Company, and Sholars, a director, endorse the note, which they declined to do. W. A. Ward, secretary of the Irrigation Company, then wrote and gave to Wingate to hand to Womack the following letter:

"Office of Orange County Irrigation Company,
"Orange, Texas, 2/18/08.

"Mr. Henry Womack,

"Dear Sir—You can take from Mr. Morgan Wingate to yourself the same security we proposed to take, if you wish, and I am satisfied you can use the paper in that way and make yourself perfectly safe. That is, by taking a lien on Morgan's one-half of 150 acres of rice in addition to the mules.

"The directors of the company do not care to endorse personally on a trade of this kind, but are willing to let you have the first lien as above.

"Please let us know what you decide to do in the matter.

"Very truly yours,
"Orange County Irrigation Co.,
"By W. A. Ward, Secy."

Wingate and Womack then took this letter to the bank, and upon the faith thereof they executed to the bank their joint note for $1315, the price of the mules; and Wingate executed to the bank a mortgage or deed of trust to secure the note on the mules, and also on "my fourth interest in 300 acres of rice to be planted on the Orange County Irrigation Company farm known as the Lyons Place." This note and mortgage were executed on the 19th of February, 1908, and filed for record on the 21st of February. Thereupon the bank gave to Wingate, and Wingate paid to Womack, the $1315, and Womack delivered the mules to Wingate. On February 20th, Wingate gave to appellant a mortgage or deed of trust to W. A. Ward, trustee for the bank, on these six mules, bought of Womack, and four others and also upon "my one-half interest in and to the rice crop to be raised by me on 300 acres of the William Clark league in Orange County, during the year 1908." This is the same land known as the Lyons Place mentioned in appellee's mortgage. This mortgage is given to secure $1000 and other advances to be made to enable him to make said rice crop. The instrument also states that the Irrigation Company also has the landlord's lien upon the crop, which is not to be waived by the execution of the mortgage but is to remain in full force and effect. It contains the further stipulation: "All of the above property is owned by me in good faith under perfect title, free from all liens whatsoever, and I hereby bind and obligate myself to keep said property in said Orange County and free from all liens, other than the one herein given and the landlord's lien above recognized, until the indebtedness herein and hereby secured is paid in full. Save and except that all of the aforesaid mules and one-half of the rice crop herein mortgaged, being one-fourth of the entire rice crop to be raised by me on said land for said year, is now under mortgage to the Orange National Bank of Orange, Texas, to secure the sum of $1315.20 and this mortgage is given subject to said last named mortgage to the extent of the payment of said sum of $1315.20, but no further."

The contract of rental between appellant and Wingate is not in evi-

dence, nor are its specific terms shown, but from what does appear in the record concerning it we find that appellant rented to Wingate the 300 acres described for 1908, and that the landlord was to have one-half of the crop, we assume for land rent and water. There was raised on the land 993 sacks of rice of which appellant's share for land and water rent was 496½ sacks, and Wingate's a like amount. After the rice was thrashed and sacked it was placed in appellant's warehouse, where it was then seized by the sheriff. The evidence as to whether it was divided between appellant and Wingate before the levy is very meagre, but it is sufficient to show that it was so separated, and it is clear that the 248 sacks seized were Wingate's rice, being one-half of his share.

The court instructed the jury, in substance, as to the waiver, that the letter of Ward referred to would not bind appellant unless he was authorized by Hart, the president of the company, or by the company, to waive the lien. Upon this issue the evidence is sufficient to support the conclusion which we here make, that Ward was authorized by the president, Hart, to write this letter for the company, and that the waiver of the lien was authorized by the company. Wingate turned over his share of the rice to appellant to sell and apply the proceeds to the payment of his debt for advances to enable him to make the crop, amounting to much more than the value of his entire share.

The court did not err in overruling the motion to quash the writ of sequestration on the ground, as set out in the motion, that it did not sufficiently describe the rice sought to be taken. The rice was described in the writ and the affidavit as "248 sacks of rice of the value of $2.50 per sack, raised on 300 acres of land of the Orange County Irrigation Company known as the Lyons Place by the defendant Wingate, on said land during the year 1908, and designated further as the rice subjected to said mortgage, of the value of $620." In disposing of this motion the writ is to be judged by its own recitals, and not by any evidence which tended to show that it was not in fact levied upon 248 sacks of rice of Wingate, separated from appellant's share of the 993 sacks. The description of the property, on the face of the writ, was sufficient to enable the officer to identify it. If in fact Wingate's one-half of the 993 sacks had been set apart to him, appellant had the right to select and take 248 sacks thereof, unless it should be made to appear that the sacks were not of equal value, and there is no contention presented by the pleadings or evidence that it was not, and no contention in fact set up by appellant that the 248 sacks seized was not part of Wingate's share of the rice. Appellant, in the statement of its claim, claims the rice as part of Wingate's share by virtue of its lien and the fact that it had been delivered by Wingate to it in satisfaction of his indebtedness to it. (Halbert v. San Saba Springs Live Stock Assn., 34 S. W., 636; Boykin v. Rosenfield, 69 Texas, 115; Oxsheer v. Watt, 91 Texas, 124; Woessner v. Fly, 63 Texas, 198.)

If there was any error in allowing the witness Womack to testify, over

appellant's objection, that the sheriff levied the writ on rice which was pointed out by Rufus Wingate as the rice of M. W. Wingate, it was harmless. That it was Wingate's rice, or part of his share, is admitted by the statement of its claim made by appellant. The second assignment presenting the objection is overruled.

Nor was there any error requiring a reversal, in view of the charge of the court, in refusing to allow appellant to introduce in evidence the by-laws of appellant, to show the duties of the secretary, in order to show that he had no authority, as such, to waive the lien of appellant in favor of appellee's lien. The court in effect charged the jury that he had no authority to do so by virtue of his office, and instructed the jury that his action was not binding on the company unless the letter was written with the knowledge and consent of the president of the company, and that if they found that it was written without the knowledge or consent of the company that they should not consider it. The question is presented by the third assignment of error, which is overruled.

There was no error in admitting in evidence the letter of Ward on the ground that it was addressed to Womack and not to appellee. As we have shown, Wingate was desirous of getting the mules in order that he might be able to cultivate appellant's lands, and appellant was no less interested in his doing so. Appellant's interest was such that it proposed to endorse Wingate's notes to Womack for the mules, but Womack declined to accept this. In this state of the case Ward wrote the letter to Womack, the purpose of which was to enable Wingate to purchase the mules and to waive appellant's first lien as landlord to enable him to do so. Instead of giving Womack the note and mortgage, which Womack could then have transferred and endorsed to the bank and get the money, Wingate and Womack gave their joint note to the bank and Wingate executed the mortgage to the bank to secure the same. There is nothing to indicate that appellant had any reason or desire to have the transaction take the form of a note and mortgage to Womack instead of the bank. What they wanted was for Wingate to get the mules, and the transaction finally completed differs in no substantial particular from that contemplated. Appellant knew of the execution of this mortgage the next day, and that it was given to cover the price of the mules bought from Womack, as is shown by the mortgage taken by it from Wingate on the next day on the crop and these mules in which this mortgage is recognized as superior to the mortgage there given by Wingate to appellant, and the circumstances indicate, if they do not positively show, that when appellant took this second mortgage it knew all about the circumstances under which the mortgage had been executed to the bank the day before. The fourth assignment is overruled.

What we have said also disposes of the fifth assignment, which is also overruled. As we have found in our conclusions of fact there was sufficient evidence to authorize the finding that the letter of Ward was

written with the knowledge and consent of the company, and the jury so found.

What we have said also disposes of the sixth, seventh and ninth assignments of error, which are overruled.

Our conclusions of fact dispose of the eighth assignment of error that the verdict and judgment are contrary to the evidence.

We find no error requiring reversal, and the judgment is affirmed.

Upon our first consideration of this case we concluded that the judgment ought to be reversed, and so ordered. Upon further consideration, however, and a careful review of the whole record, including the statement of facts, we have concluded that we were in error. Upon our own motion our former judgment is set aside and the judgment affirmed.

*Affirmed.*